RECEIVED
JUN 22 2005
Cert. mail #7003 1010 0004 3767 2542
FILED
2005 JUN 20 PM 4:44
BY DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**AUSTIN DIVISION**

| | | |
|---|---|---|
| **HARTFORD CASUALTY INSURANCE COMPANY** | § | |
| | § | |
| | § | |
| **v.** | § | **A-04-CA-1093 LY** |
| | § | |
| **PIXEL MAGIC IMAGING, INC., FIRST IMPRESSIONS IMAGING, INC., AND NICOLE MARIE CRUZ** | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Nicole Marie Cruz's Verified Special Appearance and Motion to Quash Service of Process, Motion to Dismiss for Lack of Personal Jurisdiction, Insufficiency of Service of Process and Improper Venue, or, in the alternative, to Dismiss or Transfer to Proper and More Convenient Venue, filed on February 25, 2005 (Clerk's Docket No. 8); Plaintiff's Response, filed on April 8, 2005 (Clerk's Docket No. 17); Defendant's Reply, filed on May 25, 2005 (Clerk's Docket No. 30); and Plaintiff's Sur-Response, filed on June 1, 2005 (Clerk's Docket No. 34). Also before the Court are Pixel Magic Imaging, Inc.'s and First Impressions Imaging, Inc's Motion to Dismiss due to the Absence of an Indispensable Party, filed on March 2, 2005 (Clerk's Docket No. 11), and Plaintiff's Response, filed on April 13, 2005 (Clerk's Docket No. 20).

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of

36

Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. GENERAL BACKGROUND

On March 26, 2004, Nicole Marie Cruz ("Cruz") filed a lawsuit in the Superior Court of Providence, Rhode Island, against First Impressions Imaging, Inc. ("First Impressions"), a provider of infant photography services, and the Women & Infants' Hospital, asserting negligent and intentional infliction of emotional distress ("Underlying Lawsuit").[1] Cruz alleges that after she gave birth to two stillborn children at the Women & Infants' Hospital on March 16, 2001, First Impressions took photographs of her deceased children and later showed her the photographs with words of congratulation printed on them.

After the Underlying Lawsuit was filed, Pixel Magic Imaging, Inc. ("Pixel Magic'), the sole parent company of First Impressions, asked its insurer, Hartford Casualty Insurance Company ("Hartford") – a Connecticut-based corporation – to defend the Underling Lawsuit. Hartford, however, refused to defend Pixel Magic and First Impressions in the lawsuit on the basis that the insurance policy did not provide coverage for the claims in the Underlying Lawsuit. Hartford contends that Cruz's allegations did not include any facts supporting her claim for negligent infliction of emotional distress. Thereafter, on October 27, 2004, Cruz, First Impressions, and Pixel Magic entered into a settlement agreement, whereby First Impressions and Pixel Magic agreed to pay Cruz one million dollars ($1,000,000) under the Hartford insurance policy. First Impressions and Pixel Magic also assigned all of their rights against Hartford to Cruz in exchange for her covenant not to execute on the $1 million settlement.

---

[1]The Underlying Lawsuit is styled *Nicole Marie Cruz v. Women & Infants' Hospital of Rhode Island*, Cause No. 04-1146.

Thereafter, Cruz sent a letter to Hartford, dated December 7, 2004, notifying Hartford of the Settlement Agreement and making a demand for payment. In the letter, Cruz notified Hartford of her intent to proceed with a lawsuit against Hartford if payment was not made within 30 days. On December 28, 2004, Hartford filed the instant declaratory judgment action in the Austin Division of the Western District of Texas seeking a declaration that the insurance policy issued to Pixel does not provide coverage for the claims asserted by Cruz in the Underlying Lawsuit, and that Pixel's assignment of its rights to Cruz violated the terms of the insurance policy and is thus unenforceable.

Two weeks after Hartford filed the instant lawsuit – on January 14, 2005 – Cruz filed a lawsuit against Hartford in Rhode Island Superior Court. Hartford subsequently removed the case to the United States District Court for the District of Rhode Island. *See Cruz v. Hartford Casualty Ins. Co.*, C.A. No. 05-38S. After the case was removed to federal court, Hartford filed a motion to transfer the case to the Western District of Texas. Although United States District Judge William E. Smith found that Cruz's anticipatory filing argument was "compelling,"and that several other factors weighed against transferring the case, he decided to "defer the ultimate decision on this matter to the court sitting in the Western District of Texas." Order on Motion to Transfer, at 5-6, C.A. No. 05-38S (D.C.R.I. May 20, 2005).

Cruz now files the instant Motion to Dismiss for lack of personal jurisdiction and improper venue, or in the alternative to transfer the case to the Rhode Island. Cruz, a Rhode Island citizen, contends that she does not have sufficient minium contacts with Texas to subject herself to this Court's jurisdiction and, therefore, argues that she should be dismissed from the suit.

## II. ANALYSIS

### A. Cruz's Motion to Dismiss

In her Motion to Dismiss, Cruz argues that the Court does not have personal jurisdiction over her because she is a resident of Rhode Island, has never traveled to or lived in Texas, owns no property in Texas, and does not operate or carry-on any business relations with Texas. Thus, Cruz contends that she has not purposely availed herself of the privilege of conducting activities in Texas or that she invoked the benefits and protections of Texas law. Cruz contends that Hartford, a Connecticut corporation, improperly filed this case in the Western District of Texas in anticipation of Cruz filing her suit in Rhode Island.

#### 1. Standard for Exercising Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the state long-arm statute permits an exercise of jurisdiction and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004); *see also* FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the district court's exercise of personal jurisdiction over the defendants would be consistent with due process. *Religious Tech Ctr.*, 339 F.3d at 373.

The exercise of jurisdiction over a nonresident defendant is proper, under the Due Process Clause, when two requirements have been met: (1) the defendant has established sufficient "minimum contacts" with the forum state and (2) exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945);

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000). A defendant has minimum contacts with a forum if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The minimum contacts requirement ensures that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As the Supreme Court has reasoned, the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotations omitted). "Jurisdiction, however, is proper where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

The minimum contacts requirement may further be subdivided into contacts that give rise to *specific* personal jurisdiction and those that give rise to *general* personal jurisdiction. *Wilson v. Berlin*, 20 F.3d 644, 647 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994). A court may exercise *specific* personal jurisdiction over a defendant if the suit arises out of or is related to the defendant's purposeful contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Alpine View Co.*, 205 F.3d at 215. By contrast, if a suit is unrelated to the defendant's activities in the forum, a court may exercise *general* personal jurisdiction over the defendant if the defendant's contacts with the forum state are substantial and "continuous and systematic." *Helicopteros*, 466 U.S. at 414-15; *Alpine View Co.*, 205 F.3d at 215. If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, then the Court must

consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. *Wilson*, 20 F.3d at 647. The fairness of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the "interests of the forum State." *Id.*

When a district court, as here, does not conduct an evidentiary hearing, the party seeking to assert personal jurisdiction is required only to present sufficient facts to make out a *prima facie* case. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000). The Court will accept as true any uncontroverted allegations contained in the party's complaint and will resolve all factual conflicts arising out of the parties' affidavits in favor of the party seeking jurisdiction. *Id.* However, the Court need not accept "merely conclcusory" allegations as true. *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

2. Has Cruz established "minimum contacts" with Texas?

In the instant case, it is undisputed that Cruz has not had substantial and "continuous and systematic" contacts with Texas. Cruz has never traveled to nor resided in Texas; she owns no property in Texas; nor does she have any trade or business ties with Texas. *See* Affidavit of Nicole Cruz, Exhibit A to Defendant's Motion. Accordingly, the Court does not have *general* jurisdiction over Cruz. Thus, the Court must determine whether it is *specific* jurisdiction over Cruz, *i.e.*, whether the suit arises out of or is related to Cruz's purposeful contacts with the forum.

As already noted, on October 27, 2004, Cruz, First Impressions, and Pixel Magic entered into a "Joint Tortfeasor Settlement Release and Indemnity Agreement" ("Settlement Agreement") whereby Cruz agreed to release and discharge First Impressions and Pixel Magic from all claims and damages arising out of the occurrences giving rise to the Underlying Lawsuit in exchange for the payment of one million dollars ($1,000,000). *See* Exhibit A to Plaintiff's Response. First Impressions and Pixel

Magic also assigned "all rights and causes of action they own against Hartford . . . for denial of coverage and/or coverage under [the insurance polices] for the events alleged in the [Underlying] Lawsuit" to Cruz in exchange for her covenant not to execute on the $ 1 million settlement. Exhibit A to Plaintiff's Response at ¶ 3 & Exhibit B to Plaintiff's Response. The Settlement Agreement also contained a choice of law provision whish stated that the Agreement "shall be construed in accordance with and governed by the laws of Rhode Island." Exhibit A to Plaintiff's Response at ¶ 15. Cruz executed the Settlement Agreement in Providence, Rhode Island, while First Impressions and Pixel Magic executed the agreement in San Marcos, Texas.

The assignment of all rights and claims against Hartford to Cruz ("The Assignment") was preserved in a separate document executed by the Parties on October 27, 2004.[2] The Assignment further provides that in exchange for Cruz's covenant not to execute the $1,000,000 settlement, Pixel Magic and First Impressions assign to Cruz "any and all claims or causes of action . . . that Pixel Magic and First Impressions may have against Hartford for Hartford's refusal to defend or indemnify First Impressions and Pixel Magic from the [Underlying] Lawsuit." Exhibit B to Hartford's Response at ¶ 1. The agreement further explains that "[t]he Assigned Claims include any causes of action recognized under the laws of the *State of Rhode Island* or other applicable jurisdictions arising out of the refusal of Hartford to defend or indemnify, or provide coverage to, Pixel Magic and First Impressions for the claims asserted in the [Underlying] Lawsuit." *Id.* (emphasis added).

Hartford argues that Cruz "purposefully availed herself" of the protections of Texas law by entering into the Assignment agreement with Pixel Magic and First Impressions and, specifically, by agreeing to the "Recital" contained in the Assignment which provided that:

---

[2]Once again, the document was executed by Cruz in Rhode Island, while First Impressions and Pixel Magic executed the agreement in Texas.

> Hartford's refusal to provide coverage to Pixel Magic and First Impressions gives rise to Pixel Magic and First Impression's right to pursue various tort, contract, statutory and common law claims and causes of action against Hartford under *Texas law* for failure to defend and indemnify the claims asserted in the [Underlying] Lawsuit.

Exhibit B to Hartford's Response at p. 11 (emphasis added). Hartford argues that by signing the Assignment, Cruz was clearly made aware that the insurance contracts would be governed by Texas law and that Pixel Magic and First Impressions are Texas Corporations and, thus, she purposely availed herself to the benefits of Texas law. However, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.3d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987). *See also, Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"). Rather, the Court must "look to the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [the nonresident defendant] purposefully established minimum contacts with the forum." *Stuart v. Spademan*, 772 F.2d 1185, 1192-93 (5th Cir. 1985).

Although Hartford makes much of the fact that the Recitals section of the Assignment Agreement refers to claims against Hartford "under Texas law," it is clearly not a forum selection clause or even a standard "choice of law" provision. Even if this reference were a choice of law provision, "such a provision standing alone would be insufficient to confer jurisdiction." *Id.* (quoting *Burger King*, 471 U.S. at 482). The other facts in the record demonstrate that Cruz did not purposefully avail herself to the privileges and protections of Texas law by signing the Assignment.

First, the Court notes that the reference to Texas law in the Recitals section of the Assignment is contradicted by the actual covenants contained in the Agreement. *See Sterquell v.*

*Archer*, 1997 WL 20881 at * 5 (Tex. App.– Amarillo Jan. 17, 1997, writ denied) ("Recitals pertaining to fact, as opposed to the terms or obligations assumed under the agreement may be contradicted by extrinsic evidence."). Under the actual terms and conditions of the contract, the Assignment states that "[t]he Assigned Claims include any causes of action recognized under the laws of the *State of Rhode Island* or other applicable jurisdictions . . ." Exhibit B to Plaintiff's Response at ¶ 1. Although the covenant refers to "other" jurisdictions, the Assignment notably only refers to Rhode Island law – not Texas law. Additionally, the Assignment clearly does not contain a forum selection or choice of law provision dictating that the claims against Hartford must be litigated in Texas.

Even more persuasive, however, is the fact that the Settlement Agreement does contain a Choice of Law provision which invokes Rhode Island law, not Texas law. The Settlement Agreement states that it "shall be construed in accordance with and governed by the laws of *Rhode Island*." Exhibit A to Plaintiff's Response at ¶ 15 (emphasis added). Thus, while Plaintiff Hartford attempts to portray the reference to Texas law in the Recital portion of the Assignment as a "choice of law" provision, the actual and true Choice of Law provision in the Settlement Agreement invokes Rhode Island law.[3]

In support of its argument that the Court has personal jurisdiction over Cruz, Hartford relies heavily on the fact that First Impressions and Pixel Magic are Texas Corporations. Hartford argues that by signing the agreements with two Texas corporations, Cruz was purposefully availing herself

---

[3]The Assignment acknowledges that the Parties are not only bound by the Assignment Agreement but also by the terms of the Settlement Agreement. *See* Exhibit B to Plaintiff's Response at ¶ 2. Thus, the Parties are bound by both the terms of the Assignment and the Settlement Agreement.

of the benefits of Texas law. Although Cruz knowingly entered into the above-agreements with First Impressions and Pixel Magic, it is unclear whether Cruz knew at that time whether the two corporations were incorporated in Texas or whether the insurance polices mentioned in the agreements were issued in Tezas. Both the Assignment and the Settlement Agreement fail to mention that First Impressions and Pixel Magic are Texas corporations and fails to state whether the insurance policies were issued in Texas or whether the policies were to be governed by Texas law. Although First Impressions and Pixel Magic executed the agreements in Texas, Cruz executed the agreements in Providence, Rhode Island. Given the multiple references to Rhode Island law contained in the agreements, as well as the specific Choice of Law provision contained in the Settlement Agreement invoking Rhode Island law, the Court is not persuaded that Cruz purposefully availed herself of the benefits of Texas law by entering into the agreements at issue.[4]

Several other factors also support a finding that Cruz did not purposefully avail herself of the benefits and protections of Texas law in this case. All of the facts and circumstances surrounding the Underlying Lawsuit occurred in Rhode Island. Cruz delivered her stillborn babies at the Women & Infants' Hospital in Rhode Island. First Impressions allegedly took photographs of the babies in Rhode Island and sent the photographs to Cruz in Rhode Island. Cruz filed her emotional distress case against the hospital, First Impressions and their parent company Pixel Magic in Rhode Island.

---

[4]*See Holt Oil*, 801 F.3d at 778 (holding that the fact that the nonresident entered into a contract with a Texas resident, in Texas was insufficient to support an exercise of specific jurisdiction where contract contained choice of law provision specifying that Oklahoma law would govern); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir.) (holding that nonresident defendant did not purposefully avail itself of the privilege of conducting business with Texas or invoking the benefits and protections of Texas law by simply entering into "an isolated transaction [contract]" that was formalized in Texas where several other factors including choice of law provision weighed against a finding of personal jurisdiction), *cert. denied*, 466 U.S. 962 (1984).

Thereafter, Cruz executed a Settlement Agreement and Assignment Agreement with First Impressions and Pixel Magic in Rhode Island. Moreover, Cruz was most likely unaware of Hartford's connections to Texas since Hartford is a Connecticut corporation who was doing business in Rhode Island. *See* Plaintiff's Notice of Removal. These facts weigh against a finding that Cruz purposefully availed herself of the privilege of conducting business in Texas or that she invoked the benefits and protections of Texas law. Given the totality of the circumstances of this case, the Court finds that by entering into the above-agreements with two Texas corporations, Cruz could not have reasonably anticipated being "hauled into court" in Texas. Based on the foregoing, it is clear that Cruz's contact with Texas rests on nothing but "the mere fortuity" that First Impressions and Pixel Magic happen to be residents of Texas. "The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause, cannot be inferred from such a "mere fortuity." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (quoting *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974)). As the Supreme Court has explained:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Burger King*, 471 U.S. at 474-75. Based upon the foregoing, Hartford has failed to sustain its burden to establish the requisite minimum contacts with Texas necessary to invoke this court's jurisdiction over Cruz.

In conclusion, the Court finds that there are insufficient contacts between the nonresident defendant, Nicole Cruz, and the State of Texas to render the exercise of personal jurisdiction over

Nicole Cruz by the district court sitting in the Western District of Texas constitutionally permissible. Based upon the arguments presented to the Court, it cannot be said that Cruz purposefully availed herself to the privilege of conducting activities within Texas, thus invoking the benefits and protections of its laws.

3. Fair Play and Substantial Justice?

Even if the Court did find that Cruz had the requisite minimum contacts with Texas, it would nevertheless find that it lacked personal jurisdiction over Cruz because Hartford has failed to establish the second prong of the jurisdictional inquiry, *i.e.*, that exercising jurisdiction over the case would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.[5]

The Supreme Court has explained that the fairness inquiry will depend on an evaluation of several factors including the burden upon the nonresident defendant; the interests of the forum state; the plaintiff's interest in securing relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987). After considering all of these factors, the Court finds that it would be unreasonable to exercise jurisdiction over Cruz in the instant case.

First, the Court notes that it would be burdensome for Cruz to litigate this case in Texas. Cruz is an individual who resides in Rhode Island who does not have unlimited financial resources (as compared to a large corporation such as Hartford) to litigate the case in a far away venue such as

[5]Because the Court has found that Hartford has failed to establish that Cruz has had the requisite "minimum contacts" with Texas, the Court is not required to address the second prong of the inquiry. *See Colwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1335 (5th Cir. 1986); *Stuart*, 772 F.2d at 1191-92. However, out of an abundance of caution, the Court will address this issue as well.

Texas. Cruz has already retained an attorney in Rhode Island who is familiar with her case. Cruz contends that it would be financially burdensome for her to litigate this case in Texas. It does not appear that Hartford has any real interest in litigating this case in Texas. Hartford is a Connecticut corporation which routinely does business in Rhode Island. Hartford has failed to demonstrate that it is more convenient for it to litigate this case in Texas rather than in Rhode Island.

Although Texas may have some interest in litigating this case given the allegation that the insurance polices were issued in Texas to two Texas Corporations, First Impressions and Pixel Magic have assigned their interests to Cruz – a Rhode Island resident. Therefore, no party to the instant case is a Texas resident and thus Texas's legitimate interest in this suit has diminished. *See Asahi*, 480 U.S. at 114. Clearly, Rhode Island has a more substantial interest in litigating a case involving one of its own citizens. Weighing all of the factors listed above, the Court finds that the most efficient use of government resources would be to litigate this case in Rhode Island – where the events giving rise to this lawsuit actually occurred.

Based on the foregoing, the Court finds that there are insufficient contacts between Cruz and Texas to render constitutionally permissible an exercise of jurisdiction over Cruz by the instant District Court. Accordingly, Defendant Cruz's Motion to Dismiss should be granted for lack of personal jurisdiction.

**B. Pixel Magic and First Impressions' Motion to Dismiss**

Defendants Pixel Magic and First Impressions move the Court to dismiss this case under Rule 12(b)(7) for failure to join necessary parties as required by Rule 19. Defendants argue that "[i]n the event the claims against Nicole Marie Cruz are dismissed [the Defendants] move that this Court dismiss plaintiff's suit due to the absence of an indispensable party." Defendants' Motion at 1.

Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under

Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. FED. R. CIV. P. 19. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003). If joinder is warranted, then the party will be brought into the lawsuit. Fed. R. Civ. P. 19(a). However, if such joinder would destroy the court's jurisdiction or if the court does not have personal jurisdiction over the party, then the court must determine whether to press forward without the party or to dismiss the litigation under Rule 19(b). *Id.*; *Painewebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001), *cert. denied*, 537 U.S. 815 (2002).

To determine whether a suit should be dismissed under Rule 12(b)(7), the court must first determine whether a party, such as Nicole Cruz, is *necessary* to the action and should be joined to the lawsuit under Rule 19(a). *Id.* Rule 19(a) describes this initial inquiry as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV.P. 19(a). If the court finds that the person or entity falls within either of the above categories, then the party must be joined to the lawsuit if possible. However, if the court lacks personal jurisdiction over the party, as in the instant case, then the party cannot properly be brought before the court. *Keweenaw Bay Indian Community v. Michigan*, 11 F.3d 1341, 1345-46 (6th Cir. 1993). If the party cannot be brought before the court, then the court must determine whether it can proceed without the absent party or, to the contrary, whether the case must be dismissed due to the

indispensability of that party pursuant to Rule 19(b). *Id.*

In the instant case, Defendant Nicole Cruz is a party who should be joined in the instant lawsuit. Defendant Cruz was the Plaintiff who was allegedly injured in the Underlying Lawsuit. Defendants First Impressions and Pixel Magic assigned their rights and claims against their insurer Hartford to Cruz in an agreed settlement and Assignment Agreement. Thus, the instant coverage dispute now involves Cruz and Hartford. Although Hartford claims that the Assignment is invalid and that, therefore, Cruz is not a necessary party to the lawsuit, the Court finds her presence in the lawsuit is necessary to determine this issue since she was one of the parties who signed the agreement. Since there are two federal lawsuits currently pending involving Hartford over the instant coverage issue, the Court also finds that the parties in the instant suit risk incurring double or inconsistent judgments. Accordingly, the Court finds that Cruz is a necessary party who should be joined in the instant lawsuit. Because this Court lacks personal jurisdiction over Cruz, however, Cruz cannot properly be brought before this Court.

Therefore, the Court must determine whether it can proceed without Cruz. Factors that the court should consider in determining whether to dismiss a suit under Rule 19(b) include: (1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed. ***Wingate***, 327 F.3d at 439. The Court finds that litigating this lawsuit without Cruz would prejudice Cruz and the remaining parties to the lawsuit. Cruz's presence is necessary to adequately address the issues and claims in the instant lawsuit. In addition, the parties run the risk of incurring double or inconsistent judgments. The Court finds that the it would be inequitable to Cruz and the Defendants to continue with this litigation without Cruz. Moreover, Hartford has another effective forum available to it in the

Federal District Court in Rhode Island, where Cruz's coverage suit against Hartford is already pending.[6] Therefore, this lawsuit should be dismissed under Rule 19(b).

## III. RECOMMENDATION

The Magistrate Court **RECOMMENDS** that the District Court **GRANT** Defendant Nicole Marie Cruz's Motion to Dismiss for Lack of Personal Jurisdiction (Clerk's Docket No. 8). The Magistrate Court **FURTHER RECOMMENDS** that the District Court **GRANT** Defendants Pixel Magic Imaging, Inc.'s and First Impressions Imaging, Inc's Motion to Dismiss due to the Absence of an Indispensable Party (Clerk's Docket No. 11). The Magistrate Court **FURTHER RECOMMENDS** that the District Court **DISMISS** this action in its entirety and deny all relief not expressly granted in this Order.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28

[6]Although not faced with the question in this lawsuit, if Hartford moves to join First Impressions and Pixel Magic in the Rhode Island lawsuit, presumably the District Court for the District of Rhode Island would have jurisdiction over First Impressions and Pixel Magic given their business dealings in Rhode Island as evidenced by the events giving rise to the Underlying Lawsuit.

U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

The Clerk is directed to mail a copy of the instant recommendation to all parties by certified mail, return receipt requested.

SIGNED this the 20th day of June, 2005.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2005 SEP -6 PM 1:34
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY AF
DEPUTY

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, PLAINTIFF, | § § § | |
| V. | § § | CAUSE NO. A-04-CA-1093-LY |
| PIXEL MAGIC IMAGING, INC., FIRST IMPRESSIONS IMAGING, INC., AND NICOLE MARIE CRUZ, DEFENDANTS. | § § § § § § | |

**FINAL JUDGMENT**

Before the Court is the above-entitled cause. On this same date, this Court signed an order approving and accepting the United State Magistrate Judge's Report and Recommendation, granting Defendant Nicole Marie Cruz's motion to dismiss for lack of personal jurisdiction and granting Defendants Pixel Magic Imaging, Inc.'s and First Impressions Imaging, Inc.'s motion to dismiss due to the absence of an indispensable party. Accordingly, the Court enters the following Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS HEREBY ORDERED** that Defendant's Nicole Marie Cruz's Motion to Dismiss for Lack of Personal Jurisdiction filed February 25, 2005 (Doc. #8) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Pixel Magic Imaging, Inc.'s and First Impressions Imaging, Inc.'s Motion to Dismiss Due to the Absence of an Indispensable Party filed March 2, 2005 (Doc. #11) is **GRANTED.**

**IT IS FURTHER ORDERED** that all claims and causes of action are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that all relief not expressly granted is hereby **DENIED.**

39

**IT IS FINALLY ORDERED** that the case hereby **CLOSED**.

SIGNED this 6th day of September, 2005.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

FILED

2005 SEP -6 PM 1:34

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY [signature]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

HARTFORD CASUALTY INSURANCE COMPANY, PLAINTIFF, § § § § V. § CAUSE NO. A-04-CA-1093-LY § PIXEL MAGIC IMAGING, INC., FIRST IMPRESSIONS IMAGING, INC., AND NICOLE MARIE CRUZ, DEFENDANTS. § § § §

**ORDER**

Before the Court are Defendant Nicole Marie Cruz's Verified Special Appearance and Motion to Quash Service of Process, Motion to Dismiss for Lack of Personal Jurisdiction, Insufficiency of Service of Process and Improper Venue, or, in the alternative, to Dismiss or Transfer to Proper and More Convenient Venue filed February 25, 2005 (Doc. #8); Plaintiff's Response filed April 8, 2005 (Doc. #17); Defendant's Reply filed May 25, 2005 (Doc. #30); and Plaintiff's SurResponse filed June 1, 2005 (Doc. #34). Also before the Court are Defendant Pixel Magic Imaging, Inc.'s and First Impressions Imaging, Inc.'s Motion to Dismiss Due to the Absence of an Indispensable Party filed March 2, 2005 (Doc. #11), and Plaintiff's Response filed April 13, 2005 (Doc. #20). The motions, responses, reply, and surresponse were referred to the United States Magistrate Judge for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended. The Magistrate Judge filed his Report and Recommendation on June 20, 2005 (Doc. #36). On June 30, 2005, Plaintiff Hartford Casualty Insurance Company filed its Objections to the Report and Recommendation (Doc. #37).

The Magistrate Judge recommended that this Court grant Defendant Nicole Marie Cruz's motion to dismiss for lack of personal jurisdiction. The Magistrate Judge further recommended that

38

this Court grant Defendants Pixel Magic Imaging, Inc.'s and First Impressions Imaging, Inc.'s Motion to dismiss the remaining cause of action due to the absence of an indispensable party, dismiss this action in its entirety, and deny all relief not expressly granted. In light of Plaintiff's objections, the Court has undertaken a *de novo* review of the entire case file in this action and finds that the Report and Recommendation filed by the Magistrate Judge is correct and should be approved and accepted by the Court for the reasons stated therein.

In its Objections to the Report and Recommendation, Plaintiff Hartford Casualty Insurance Company ("Hartford") contends that the Magistrate Judge's finding that Defendant Nicole Marie Cruz ("Cruz") is not subject to personal jurisdiction in Texas is improper because his findings erroneously focus on the facts of the underlying tort action against Hartford's insureds, rather than on the facts surrounding the insurance dispute between Hartford and its insureds, and because he fails to address controlling Fifth Circuit authority holding that a party subjects herself to personal jurisdiction when she accepts an assignment of rights that interjects herself into a dispute in that forum. Hartford also objects to the Magistrate Judge's finding that Cruz may not have known at the time she entered into the Settlement Agreement with Defendants Pixel Magic Imaging, Inc. ("Pixel") and First Impressions Imaging, Inc. ("First Impressions") that Pixel and First Impressions were both incorporated in Texas and that their insurance policies were issued in Texas based upon the fact that without an evidentiary hearing Hartford need only make a *prima facie* showing of the facts upon which jurisdiction is based and therefore the Magistrate Judge was required accept as true Hartford's uncontroverted allegations. This Court notes that, as further stated by the Magistrate Judge in his Report and Recommendation, although the Court will accept as true any uncontroverted allegations

contained in the Hartford's complaint the Court need not accept "merely conclusory" allegations as true. *Central Freight Lines, Inc. v. APA Transp. Co.*, 322 F.3d 376, 380 (5th Cir. 2003).

Even accepting Hartford's allegations as true, however, and therefore disregarding the Magistrate Judge's finding regarding Cruz's knowledge of Pixel and First Impressions's citizenship, upon full *de novo* review of the record in this cause and all applicable law, the Court finds that the Magistrate Judge's findings and recommendations are proper and should be accepted. As noted by the Magistrate Judge in his Report and Recommendation, the recitals section of the assignment agreement upon which Hartford relies due to its reference to Pixel's and First Impressions's possible claims and causes of action against Hartford under Texas law contradicts the choice of law provision in the underlying settlement agreement between Cruz, Pixel, and First Impressions. That settlement agreement is also referenced in the assignment agreement upon which Hartford relies. Hartford criticizes the Magistrate Judge for his "failure to even discuss" the Fifth Circuit's decision in *Icee Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586 (5th Cir. 2003), in which the Circuit held that an assignment agreement which gave a nonresident ownership rights to trademarks was sufficient to find that the district court had specific jurisdiction over the nonresident. The facts in *Icee,* however, are distinguishable from this case. First, the nonresident in *Icee* was a corporate trademark owner rather than an individual. Second, the assignment at issue in *Icee* involved trademark ownership rights of a business entity, not rights of recovery of damages from a tort claim arising in another jurisdiction. Third, and most important, the factors in determining fair play and substantial justice differ greatly between the nonresident corporation involved in *Icee* and Cruz in this case. The burden of litigation alone is much greater for Cruz in this action. Taking all these factors into consideration, this Court finds that the Fifth Circuit's holding in *Icee* is not controlling in this case.

**IT IS THEREFORE ORDERED** that the United States Magistrate Judge's Report and Recommendation filed in this cause is hereby **APPROVED** and **ACCEPTED** by this Court.

**IT IS FURTHER ORDERED** that Plaintiff Hartford Casualty Insurance Company's objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Nicole Marie Cruz's Motion to Dismiss for Lack of Personal Jurisdiction filed February 25, 2005 (Doc. #8) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Pixel Magic Imaging, Inc.'s and First Impressions Imaging, Inc.'s Motion to Dismiss Due to the Absence of an Indispensable Party filed March 2, 2005 (Doc. #11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Hartford Casualty Insurance Company's Request for Oral Argument is **DENIED.**

**IT IS FINALLY ORDERED** that all claims and causes of action are **DISMISSED WITHOUT PREJUDICE** and all further relief not expressly granted is **DENIED**.

SIGNED this 6th day of September, 2005.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE